## Merchants and Farmers State Bank, Appellant, v. W. W. Sheridan et al., Appellees.

1. BANKRUPTCY—*what not affected by composition agreement.* A composition agreement does not operate to prevent a party from realizing upon any security of which he could have availed himself if no such agreement had existed.

2. BANKRUPTCY—*when creditor not bound to disclose security.* If property pledged to a creditor belongs to a bankrupt co-partnership, which is the debtor, the creditor upon filing his claim against such bankrupt is bound to disclose the fact that he held the same as security for the payment of the partnership debt; but if the property pledged belongs to a third person, no such duty devolves upon the creditor.

3. PLEDGES—*when foreclosure appropriate.* Foreclosure lies for the purpose of enforcing a debt against a pledge given as security therefor if there are conflicting claims as to the ownership and right of possession of the pledge.

Bill in equity. Appeal from the Circuit Court of Moultrie county; the Hon. WILLIAM C. JOHNS, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed May 28, 1910.

E. J. MILLER, for appellant.

WALTER EDEN and R. M. PEADRO, for appellees.

MR. PRESIDING JUSTICE BAUME delivered the opinion of
the court.

The complainant, Merchants and Farmers State Bank of
Sullivan, filed its bill in equity against W. W. Sheridan and
R. M. Peadro to foreclose its alleged lien upon a certain
diamond which formerly belonged to the defendant Sheridan,
and was claimed by him to have been deposited with the
complainant for safe keeping, and the title to and right of pos-
session of which was claimed by the defendant Peadro under
and by virtue of a bill of sale therefor from said Sheridan
while the same was in possession of complainant under its
claim that the diamond was delivered to it by Sheridan in
pledge as security for the payment of certain indebtedness ow-
ing to it by said Sheridan and his mother, Carrie Sheridan,
as copartners doing business as W. W. Sheridan.  Upon issues
joined on the separate answers of said Sheridan and said
Peadro to said bill of complaint and complainant's replica-
tions to said answers the cause was referred to the master in
chancery to take the proofs therein, and upon a hearing upon
said proofs the chancellor entered a decree dismissing said
bill for want of equity.  To reverse such decree the complain-
ant prosecutes this appeal.

The right of the complainant to invoke the remedy sought
was unchallenged by the defendants either by demurrer to
the bill or by their answers thereto.

The uncontroverted facts established by the evidence are
substantially as follows: On July 1, 1906, W. W. Sher-
idan and Carrie Sheridan, his mother, as co-partners, con-
ducted a retail clothing business in Sullivan under the name
of W. W. Sheridan, and said co-partnership was then in-
debted to the complainant in the principal sum of $2504.23
represented by notes aggregating $2100 and an overdraft for
$404.23.  On or about said date, W. A. Steele, the president
of complainant bank, interviewed the defendant Sheridan
in his place of business relative to the overdraft of $404.23
and requested that it be "fixed up."  Sheridan then gave to
Steele the diamond in question, which was claimed by Sheri-
dan to be worth from $600 to $700, but which appears from

the evidence to have been worth from $350 to $400, and on the same day or within a day or two thereafter Sheridan gave to the complainant a note that covered the amount of said overdraft.   In September, following, said co-partnership was further indebted to complainant in an overdraft for $42.-95, and thereupon the complainant obtained judgments by confession upon said notes against said co-partnership for the aggregate amount of $2667.40, upon which judgments executions were issued and levied upon the stock of goods belonging to said co-partnership.   Shortly thereafter the Sheridans employed the defendant, R. M. Peadro, an attorney at law, to institute their voluntary proceedings in bankruptcy, and on September 30, 1906, said W. W. Sheridan executed to said Peadro, in consideration for legal services, a bill of sale for said diamond, and also executed a written order addressed to W. A. Steele directing him to deliver the said diamond to said Peadro.   In October 1906, before Peadro had completed the preparation of the necessary papers with reference to the contemplated voluntary proceedings in bankruptcy, creditors of said co-partnership other than the complainant, instituted involuntary proceedings in the United States District Court to have said co-partnership adjudged bankrupt, and thereupon the sale of the property under the executions issued upon the judgments by confession in favor of the complainant was enjoined by said court, and said property came into the possession of the trustee in bankruptcy appointed by said court.   The complainant filed its claim against said bankrupt co-partnership with the referee in bankruptcy, as being unsecured, and the same was allowed as an unsecured claim.   Thereafter, a composition agreement, the details of which are not here necessarily involved, was entered into by the creditors whereby they were to receive 33⅓% of the amount of their claims, which composition agreement was approved and confirmed by the court.

The only controverted question of fact in the case relates to the purpose for which the defendant, W. W. Sheridan, gave to complainant or to W. A. Steele, its president, for it, the diamond in question.   Steele testified that upon the

occasion when he went to see Sheridan with reference to "fixing up" the overdraft for $404.23, Sheridan took the diamond from his pocket and handed it to him, saying in substance, "I will give you this as security for the $400 note," referring to a note for that amount signed by W. W. and Carrie Sheridan; that he told Sheridan he did not know anything about the value of the stone and didn't want it, and Sheridan replied, "You take it, it will stand as security, and you sell it as soon as you can;" that he took the stone to the bank where he thereafter kept it in the safe; that Sheridan subsequently frequently asked him if he had made any sale of the diamond.

Z. D. Whitfield, teller of complainant bank, testified that he saw Sheridan who asked him if Steele had shown him the "sparkler" which he (Sheridan) left with Steele for security, and upon his replying that he didn't know anything about it, Sheridan told him he had given it to Steele as security to cover the overdraft; that he thereafter heard Sheridan tell Steele to sell it for $350 or $400, but not to take less than that; that Sheridan was in the bank several times and asked Steele whether he had done anything with the diamond.

Hugh Lindner, a witness called on behalf of the defendant Peadro, testified that upon one occasion while he was clerking for Sheridan he heard a conversation between Sheridan and Steele with reference to the diamond; that he heard Sheridan ask Steele if he (Steele) didn't want to buy a diamond and Steele replied, "No," but he would take it and sell it for him; that Sheridan gave Steele the diamond and Steele took it with him; that he was 30 or 35 feet from Steele and Sheridan while they were conversing and did not hear all the conversation between them. Frank Moore, also a witness called by the defendant Peadro, testified that he was in Sheridan's place of business and heard a conversation between Steele and Sheridan; that as Steele started out of the store Sheridan asked him if he did not want to buy a diamond and Steele replied, "He didn't want to buy it but he might take it over and try to sell it for him;" that Steele then returned to the office in the storeroom where Sheridan was, and where

Steele and Sheridan had some further conversation which he did not hear; that he did not see the diamond and did not see Sheridan give it to Steele. The defendant, W. W. Sheridan, did not testify as a witness in the case, but there is in evidence a letter written by him to Steele under date of September 6, 1907, in which he says: "As you have sold the store formerly mine you no doubt have rec'd what monies you had invested, in which case you will express me by return mail the diamond I left in your keeping. This is no more than right, Mr. Steele, and I trust I will receive the diamond at once."

The above and foregoing is all the evidence in the case bearing upon the controverted question of fact involved and in our opinion warrants no other conclusion than that Sheridan pledged the diamond in question to the complainant bank as security for the payment of the $400 note made to it by the co-partnership.

There is no appearance in this court by the defendant Sheridan but it is urged on behalf of the defendant Peadro that the decree must have necessarily been predicated upon a finding by the chancellor, first, that the composition agreement having been accepted and the money paid thereunder complainant's claim was satisfied and that the pledge, if it was a pledge, was released; or second, that the diamond was pledged as security for the payment of the $400 note, and inasmuch as more than $400 of the entire indebtedness was realized by the complainant the pledge was thereby released; or third, that as the diamond was given to Steele for the purpose of being sold for a sum not less than $350 or $400, and as Steele did not sell the stone under that agreement or attempt to do so, the giving by Sheridan of the bill of sale and the order heretofore mentioned revoked the authority of Steele; or fourth, that a settlement was had which liquidated all the indebtedness of the Sheridans to the complainant.

It is not pretended that the diamond in question belonged to the co-partnership, but it is conceded that it was the individual property of W. W. Sheridan. Sheridan, although a member of the co-partnership, was a distinct and separate

entity from the copartnership. *In re* Bertenshaw, 157 Fed. Rep. 363. The composition agreement did not operate to prevent complainant from realizing upon any security of which it could have availed itself if no such agreement had existed. *In re* Mertens, 144 Fed. Rep. 818, it was held that where the individual property of one partner of a firm is pledged to secure a debt of the partnership, and the partnership is afterwards declared bankrupt, the creditor is entitled to prove the full value of his claim against the partnership, without any deductions for the security pledged; and that a creditor of a bankrupt partnership is not required to apply securities in his hands, which are the individual property of one of the partners, upon his claim against the partnership, but may prove his claim against the bankrupt partnership, and have it allowed in full. Property pledged by a third person as security for the payment of a debt of another stands in the position of a surety of the debtor. Price v. Dime Savings Bank, 124 Ill. 317. Section 16 of the National Bankruptcy Law of 1898, provides that the liability of a person who is a co-debtor with or guarantor or in manner surety for a bankrupt shall not be altered by a discharge of such bankrupt, and section 14c of the same law provides that the confirmation of a composition shall discharge a bankrupt from his debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge. If the property pledged had belonged to the co-partnership the complainant bank upon filing its claim against the bankrupt co-partnership would have been bound to disclose the fact that it held the same as security for the payment to it of the partnership indebtedness, but as the property pledged belonged to a third person no such duty devolved upon the complainant. The second proposition advanced by the defendant Peadro, that inasmuch as more than $400 of the entire indebtedness was realized by the complainant, the property pledged as security for the payment of the note for that amount was thereby released, is also untenable. The composition agreement provided for the payment to the creditors of the bankrupt co-partnership 33⅓% of the amount of their claims, and the

payment made to the complainant in pursuance of such composition agreement was not available to discharge certain items constituting a part of the entire indebtedness to the exclusion of certain other items. At most such payment to the complainant was only operative to discharge $33\frac{1}{3}\%$ of the amount due on said $400 note.

In the face of the conflicting claims of the defendants, Sheridan and Peadro, to the ownership and right of possession of the diamond in question, and the threatened litigation by Peadro to establish his alleged claims, complainant was fully warranted in filing its bill herein to obtain a decree for the foreclosure of the pledge, before attempting to sell the same under circumstances which must necessarily have operated to depreciate its selling price.

Other than the composition agreement which was approved and confirmed by the court in the bankruptcy proceedings there is no evidence tending to show any settlement or compromise of the debt due the complainant from the co-partnership, and as said composition agreement did not operate to release the pledge sought to be foreclosed the complainant is entitled to a decree foreclosing the same.

The decree of the circuit court will be reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*